UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

URIEL VALDOVINOS TORRES,

    Petitioner,

v.

UNITED STATES OF AMERICA,

    Respondent.

CASE NO. C10-5896BHS

ORDER DENYING PETITION

This matter comes before the Court on Petitioner Uriel Valdovinos Torres's ("Torres") petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255. Dkt. 1. The Court has considered the pleadings filed in support of and in opposition to the motion and the remainder of the file and hereby denies the motion for the reasons stated herein.

**I. PROCEDURAL HISTORY**

On June 8, 2009, Torres pled guilty to a charge of conspiracy to distribute a controlled substance in violation of 21 U.S.C. § 841(a)(1). On December 7, 2009, Torres was sentenced to 120 months of incarceration. On December 21, 2009, the Court denied

1 Torres's motion for reconsideration of the Court's finding that Torres was unqualified for
2 a safety valve.

3 On December 6, 2010, Torres filed the instant § 2255 petition. Dkt. 1. On February 2, 2011, Respondent United States of America (the "Government") filed a response in opposition to the motion. Dkt. 8. On March 30, 2011, the Court issued an order stating that it was inclined to deny Torres's motion but that, in an abundance of caution, it was ordering Torres's former counsel, Karen Unger ("Unger"), to submit a declaration regarding her discussions with Torres. Dkt. 12. On June 9, 2011, Unger submitted a declaration stating that she did not have any information to provide to the Court unless she was subpoenaed to testify. Dkt. 13. On July 26, 2011, the Court granted the Government's motion to compel Unger's testimony. On August 23, 2011, the Court held an evidentiary hearing at which Unger testified regarding her discussions with Torres. *See* Dkts. 18 & 19. At the hearing, the Court concluded that the parties should file additional briefing following Unger's testimony. On September 7, 2011, Torres filed an additional brief (Dkt. 20) and on September 9, 2011, the Government filed a brief (Dkt. 21). On September 23, 2011, Torres filed a reply (Dkt. 22).

## II. DISCUSSION

Torres's § 2255 petition is based on his claim that he received ineffective assistance of counsel because his attorney allegedly failed to inform him that his guilty plea would subject him to removal and therefore his conviction should be vacated under the United States Supreme Court case of *Padilla v. Kentucky*, 130 S. Ct. 1473 (2010) .

A.  **Standard of Review**

Under 28 U.S.C. § 2255, a court may grant relief to a federal prisoner who challenges the imposition or length of his or her incarceration on the ground that: (1) the sentence was imposed in violation of the Constitution or laws of the United States; (2) the court was without jurisdiction to impose such sentence; (3) the sentence was in excess of the maximum authorized by law; or (4) the sentence is otherwise subject to collateral attack. § 2255(a). A petitioner must allege specific facts that, if true, entitle the petitioner to relief. *See United States v. Howard*, 381 F.3d 873, 877 (9th Cir. 2004); *United States v. Rodrigues*, 347 F.3d 818, 824 (9th Cir. 2003) (citing *United States v. McMullen*, 98 F.3d 1155, 1159 (9th Cir. 1996)). A judge may dismiss a § 2255 motion if "it plainly appears from the motion, any attached exhibits, and the record of prior proceedings that the moving party is not entitled to relief." Rule 4(b), § 2255 Rules.

B.  **Applicability of *Padilla***

On March 31, 2010, the Supreme Court held that, to be constitutionally effective, counsel "must inform her client whether his plea carries a risk of deportation." *Padilla*, 130 S. Ct. at 1486. Whether *Padilla* applies retroactively to collateral challenges remains unclear. The Government contends that under *Teague v. Lane*, 489 U.S. 288 (1989), *Padilla* announces a new rule of criminal procedure that does not apply retroactively to cases on collateral review. Dkt. 8 at 5. However, if *Padilla* merely restates existing law, as opposed to announcing a new rule, then it certainly does apply to all cases, including collateral attacks such as the § 2255 action Torres brings here. *See Whorton v. Bockting*, 549 U.S. 406, 416 (2007) (construing *Teague*, 489 U.S. 288, as holding that an old rule

applies to all cases, but a new rule applies only to cases on direct review, not to collateral actions).

Whether *Padilla* states a new rule or restates existing law is unclear. This Court has not found a federal appellate decision addressing this issue but notes that district courts are split. *Compare Doan v. United States*, --- F. Supp. 2d ----, 2011 WL 116811, at *3 (E.D. Va. Jan. 4, 2011); *United States v. Hough*, 2010 WL 5250996, at *3-4 (D.N.J. Dec. 17, 2010); *United States v. Perez*, 2010 WL 4643033, at *2 (D. Neb. Nov. 9, 2010) (all holding that Padilla states a new rule) *with Marroquin v. United States*, 2011 WL 488985, at *2 (S.D. Tex. Feb. 4, 2011); *Luna v. United States*, 2010 WL 4868062, at *3-4 (S .D. Cal. Nov. 23, 2010); *United States v. Masterman*, 2010 WL 4366156 (E.D. Cal. Oct. 27, 2010); *United States v. Shafeek*, 2010 WL 3789747, at *3 (E.D. Mich. Sept. 22, 2010); *Martin v. United States*, 2010 WL 3463949, *3 (C.D. Ill. Aug. 25, 2010); *Al Kokabani v. United States*, 2010 WL 3941836, *4-6 (E.D.N.C. July 30, 2010); *United States v. Hubenig*, 2010 WL 2650625 (E.D. Cal. July 1, 2010); *United States v. Millan*, 2010 WL 2557699, at *1 (N.D. Fla. May 24, 2010) (all holding that Padilla does not state a new rule).

The Court need not resolve the issue of whether *Padilla* states a new rule or restates existing law because, even if assuming *Padilla* merely restates existing law, Torres cannot prevail for the reasons stated below.

### C. Torres's Ineffective Assistance of Counsel Claim

Torres contends that, under *Padilla*, his attorney's alleged failure to advise him of the immigration consequences of his conviction denied him ineffective assistance of counsel and thus, the Court should vacate his conviction and sentence. Dkt. 1 at 4.

The defendant's claim that his conviction and sentence must be vacated because he received ineffective assistance of counsel is evaluated under the standard articulated by the Supreme Court in *Strickland v. Washington*, 466 U.S. 668 (1984). To establish constitutionally ineffective assistance of counsel under *Strickland*, a defendant must show that his counsel's performance was inadequate and that inadequate performance prejudiced the defendant.

#### 1. Inadequate Performance

In order to demonstrate inadequate performance, a defendant must show that "counsel's representation fell below an objective standard of reasonableness." *Id*. at 688. This Court's "scrutiny of counsel's performance must be highly deferential[ ]" and the Court "must indulge a strong presumption that a counsel's conduct falls within the wide range of reasonable professional assistance." *Id*. at 689.

In *Padilla*, the Supreme Court held that a defense counsel's failure to provide a client with advice or accurate information regarding the risk of removal or deportation resulting from a conviction may constitute inadequate performance under the first prong of the *Strickland* standard governing ineffective assistance claims. 130 S. Ct. at 1483-86. In addition, the *Padilla* opinion provided guidance as to the contours of defense counsel's obligation to advise his client on the possible immigration consequences of a guilty plea:

"When the law is not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences. But when the deportation consequence is truly clear . . ., the duty to give correct advice is equally clear." *Id*. at 1483.

Here, Torres filed a declaration in support of his § 2255 petition in which he states:

> Through the course of my case, my attorney never discussed my immigration status. In addition, my attorney never discussed the consequences that the conviction would have on my immigration status. Furthermore, she never discussed possible relief from removal nor what could be done to protect my immigration status.
> Had I been informed of the immigration consequences of my plea of guilty or had I been told that I would not have any way to request relief from the Immigration Judge or the fact that the conviction was an "Aggravated Felony" under the Immigration and Nationality Act, I would not have entered a guilty plea.

Dkt. 2 at 2. Torres maintains that his attorney's conduct, as described in his declaration, fell below the *Strickland* standard of adequate performance; thus, he did not receive effective assistance of counsel and his conviction and sentence should be vacated under § 2255. Dkt. 1.

The Government contends that Torres has failed to show that his attorney's conduct constituted inadequate performance under *Strickland* because the facts surrounding his case and the advice given by his attorney are not analogous to those present in *Padilla*. Specifically, the Government argues that

> The *Padilla* facts are completely unlike the instant case. In *Padilla*, the petitioner was a lawful and permanent resident of the United States for over 40 years. Padilla served with honor as a member of the U.S. Armed Forces during the Vietnam War. And although the immigration

> consequences related to Padilla's drug conviction were serious, his counsel told Padilla that he "did not have to worry about immigration status since he had been in the country so long." *Padilla*, 130 S. Ct. at 1475-76.
>
> Torres presents a much different pictures. First, Torres was not a lawful and permanent resident. According to [Torres], he illegally entered [the] United States at age 21 – just 6 years before he was arrested for manufacturing and distributing marijuana. Torres never served the United States in any capacity and many of his family members continue to reside in Mexico, including his mother and father. He was also well-acquainted with the illegality of his residency as he paid a "coyote" hundreds of dollars to smuggle his own brother into this country. Most importantly, his counsel openly and expressly acknowledged in open court and in filed court documents that defendant was in this country illegally and would be deported following the completion of his court imposed sentence. All of these facts distinguish Torres from the facts considered by the Supreme Court in *Padilla*.
>
> * * *
>
> Not only are the facts different than those in *Padilla*, so too was the legal advice offered by defense counsel. In *Padilla*, defense counsel offered erroneous legal advice. In contrast, Torres' attorney correctly opined that because Torres was in the country illegally, he would be deported following incarceration. In other words, Torres received the kind of legal advice that the *Padilla* Court recommends.

Dkt. 8 at 6-7.

Based on the evidence the Court had before it in March 2011, including Torres's sentencing memorandum in which his counsel specifically states that Torres is "living in the United States illegally" and that "[n]o matter the length of sentence imposed, upon completion of any sentence, [Torres] will be deported," the Court was inclined to conclude that Torres failed to show his counsel's performance was inadequate under *Strickland*. *See* Dkt. 12. First, the Court agreed with the Government that Torres presents a very different set of facts and circumstances than those present in *Padilla*, both with respect to Torres's immigration status as a person residing illegally in the United States and with respect to his counsel's conduct. *Id*. Second, although Torres stated in

his declaration in support of his § 2255 petition that his attorney never discussed the immigration consequences of his conviction with him, she specifically stated the consequence of deportation in the sentencing memorandum. *Id*. At Torres's sentencing hearing, he told the Court that he continued to be satisfied with his counsel's services and that he had reviewed the presentence report, the Government's sentencing memorandum as well as the sentencing memorandum that was prepared on his behalf. *Id*. (citing Dkt. 212 at 4 in CR08-5533BHS). Torres did not object or make any statement to the Court regarding any inaccuracies or portions of the sentencing memorandum that he did not understand. *Id*.

In an abundance of caution, rather than ruling on Torres's petition with the evidence the Court had before it, the Court requested a declaration from Unger, Torres's former counsel, regarding their discussions of the immigration consequences of his conviction. Dkt. 12. Following Unger's filing of a declaration and a subsequent motion filed by Torres, the Court held an evidentiary hearing in which Unger was subpoenaed to testify regarding her and Torres's discussions of immigration issues. *See* Dkts. 18 & 19. Following the hearing, the parties submitted additional briefing. *See* Dkts. 20, 21, & 22.

Having had the benefit of Unger's testimony and the parties' additional briefing of the issues, the Court concludes that Torres has failed to show that Unger's performance was inadequate under *Strickland*. According to Unger's testimony, she discussed with Torres, prior to his change of plea hearing, that his conviction would be considered an aggravated felony (Dkt. 19 at 13) and that he would be subject to deportation following his incarceration (*id*. at 9). In *Padilla*, the Supreme Court states that "[w]hen the law is

not succinct and straightforward . . ., a criminal defense attorney need do no more than advise a noncitizen client that pending criminal charges may carry a risk of adverse immigration consequences." 130 S. Ct. at 1483. The opinion then states "But when the deportation consequence is truly clear . . ., the duty to give correct advice is equally clear." *Id*. In his additional briefing, Torres takes issue with Unger's statements at the evidentiary hearing in which she indicated that her standard practice when advising clients who are not United States citizens is to tell them that, depending on the charges, there may be a ground for deportation, rather than telling the client whether he or she will actually be deported. *See* Dkt. 19 at 12. However, Unger also gave testimony that, in regards to Torres, she told him he would indeed be subject to deportation. *Id*. at 9. The Court concludes that such advice is sufficient to meet the requirement under *Padilla* "to give correct advice." 130 S. Ct. at 1483. Unlike the attorney in *Padilla* who told Padilla that he "did not have to worry about immigration status since he had been in the country so long," *id*. at 1475-76, Unger told Torres that his crime was an aggravated felony and that he was subject to deportation. *See* Dkt. 19 at 9, 13. Therefore, the Court concludes that Unger gave correct advice and thus, her representation did not fall below an objective standard of reasonableness under *Strickland*. Accordingly, Torres's petition should be denied.

**2.  Prejudice**

Furthermore, even if the Court were to conclude that, as Torres argues, Unger's failure to tell Torres that by pleading guilty his deportation was an absolute certainty (rather than a possibility) fell below an objective standard of reasonableness, Torres

cannot show prejudice under *Strickland*. The second prong of *Strickland* requires a defendant to show that "there is a reasonable probability that, but for counsel's unprofessional error, the result of the proceeding would have been different." 466 U.S. at 694. In cases in which a defendant has accepted a plea agreement, prejudice is determined by asking if the defendant would have gone to trial rather than accepting the plea agreement. *Moore v. Czerniak*, 574 F.3d 1092, 1100 (9th Cir. 2009). Here, Torres maintains that had he known that accepting the plea agreement meant forgoing his opportunity to pursue cancellation of removal from the United States, he would not have accepted the plea. *See* Dkt. 20. Thus, according to Torres, he has shown prejudice under *Strickland*. The Government maintains that Torres, like the defendant in *United States v. Aceves*, 2011 WL 976706 (D. Hawaii, March 17, 2011), cannot make a showing that he could have established all four elements to be eligible for cancellation of removal and that he has otherwise failed to show prejudice. *See* Dkt. 21.

To be eligible for cancellation of removal, Torres would have had to show: (1) he had been physically present in the United States for a continuous period of not less than ten years; (2) he was a person of good moral character during such period; (3) he had not been convicted of certain crimes; and (4) removal would result in exceptional and unusual hardship to the alien's spouse, parent, or child, who is a citizen of the United States or an alien lawfully admitted for permanent residence. *See* 8 U.S.C. § 1229b(b). As the Government has shown, and Torres has admitted, he has only been in the United States since 2002, a period of seven years before he was arrested. Torres's failure to meet this element alone would make him ineligible for cancellation of removal. In

addition, Torres received substantial benefit from his acceptance of the plea agreement, including other charges being dismissed, recommendation from the Government for a three-point-reduction for acceptance of responsibility, and possible eligibility for the Safety Valve provision. *See* Dkt. 21.

The Court concludes that, based on Torres's inability to make a showing that he could meet the elements for cancellation of removal (*see Aceves*, 2011 WL 976706 at *6) and the fact that he gained substantial benefits from entering into the plea agreement, he cannot show that any failure on Unger's part to advise him of immigration consequences of his conviction resulted in prejudice under *Strickland*.

### III. ORDER

Therefore, it is hereby **ORDERED** that Torres's petition to vacate, set aside, or correct sentence pursuant to 28 U.S.C. § 2255 is **DENIED**.

Dated this 21st day of October, 2011.

BENJAMIN H. SETTLE
United States District Judge